WILLES, Appellant, vs. SMITH, Respondent.

*May 2 — May 20, 1890.*

*Sale of land: Option or binding contract? Commission of broker.*

A contract for the sale of land, upon which the purchasers paid $200 "as earnest money," provided that an abstract of title should be furnished without delay and a warranty deed delivered within ten days thereafter on receipt of the cash payment and security for deferred payments; and that "if the title is found to be good, and nevertheless not accepted by the purchasers (the deed being tendered) within the time and as herein named, said earnest money is forfeited as the consideration paid for this agreement, and the owner of said premises shall be considered to have fully performed on his part, and may declare the contract terminated. Time is made the essence of the agreement." *Held*, that the purchasers did not thereby merely secure an option to buy the land, but, if the title was good, were absolutely bound to accept the property and pay for it; and, though the vendor elected to waive a performance on their part and to retain the $200 and the property, a broker who had procured such purchasers for him was entitled to a commission on the sale.

APPEAL from the Circuit Court for *Ashland* County.

Action to recover a commission for finding a purchaser for lands of the defendant. The principal facts are stated in the opinion. The contract therein referred to is as follows:

"Ashland, Wis., March 26, 1887.

"Received of F. A. Seymour and E. C. Long, two hundred and no-100 dollars as earnest money on account of purchase of the following described real estate situated in Ashland county, state of Wisconsin, to wit: Lots thirteen and fourteen (13 and 14), in block one hundred and three (103), of Ellis Division of the town of Ashland, Ashland county, Wisconsin, sold for the sum of four thousand no-100 dollars, on the following terms of payment: One half cash, balance one year from date with interest at eight per cent. per annum. Abstract of title to be furnished without

delay, and the form of conveyance to be warranty deed, delivered within ten days thereafter upon receipt of cash payments and the securities for deferred payments. And it is agreed and understood by the purchasers that if the title is not good and cannot be made good, this agreement shall be void and the vendor shall not be liable for any damage, and the sum of two hundred dollars, earnest money, paid by the purchasers shall be returned to them. If the title is found to be good, and nevertheless not accepted by said purchasers (the deed being tendered) within the time and as herein named, said earnest money is forfeited as the consideration paid for this agreement, and the owner of said premises shall be considered to have fully performed on his part, and may declare this contract terminated. Time is made the essence of this agreement.

" F. A. Seymour and E. C. Long said purchasers agree to the foregoing terms.

" Said *F. C. Smith* to have possession for ninety days from date by paying rent at the rate of $25 per month.

" E. G. WILLES,　　　　　　　　　FRED C. SMITH,
" MARY FISHER,　　　　　　　　　　　Owner.
　　　　" Witnesses."

At the close of the testimony the circuit court directed the jury to return a verdict in favor of the defendant, and from the judgment entered on such verdict the plaintiff appealed.

The cause was submitted for the appellant on the brief of *Lamoreux & Gleason*, attorneys, and *John W. Willis*, of counsel, and for the respondent on that of *Geo. P. Rossman*.

To the point that the broker's commission is earned when a purchaser able and willing to buy on the terms proposed is found by the broker and introduced to the vendor, counsel for the appellant cited *Stewart v. Mather*, 32 Wis. 344; *Delaplaine v. Turnley*, 44 id. 31; *McGavock v. Woodlief*, 20

How. 221; *Moses v. Bierling*, 31 N. Y. 462; *Sibbald v. Bethlehem Iron Co.* 83 id. 378; *Glenthworth v. Luther*, 21 Barb. 147; *Duclos v. Cunningham*, 102 N. Y. 678; *Pearson v. Mason*, 120 Mass. 53; *Desmond v. Stebbins*, 140 id. 339; *Magill v. Stoddard*, 70 Wis. 75; *Hamlin v. Schulte*, 34 Minn. 534; *Mooney v. Elder*, 56 N. Y. 238; *Cook v. Kroemeke*, 4 Daly, 268; *Barnard v. Monnot*, 3 Keyes, 203; *O'Connor v. Semple*, 57 Wis. 243, 248; *McClave v. Paine*, 49 N. Y. 561; *Lloyd v. Matthews*, 51 id. 124; *Timberman v. Craddock*, 70 Mo. 638; *Sussdorff v. Schmidt*, 55 N. Y. 319; *Cook v. Fiske*, 12 Gray, 491; *Knapp v. Wallace*, 41 N. Y. 477; *Kock v. Emmerling*, 22 How. 69.

Counsel for the respondent contended, *inter alia*, that where a party is produced and a contract is entered into through the agency of the broker, but the contract is of such a character that the party contracting, by the exercise of an option given him, relieves himself of the obligation to complete the purchase, the broker is not entitled to commission. *Kimberly v. Henderson*, 29 Md. 512. The broker is not entitled to a commission until he obtains a written contract the specific performance of which can be compelled. *Barnes v. Roberts*, 5 Bosw. 73; *Simonson v Kissick*, 4 Daly, 143; *Tombs v. Alexander*, 101 Mass. 255; *Walker v. Tirrell*, id. 257; *Coleman's Ex'r v. Meade*, 13 Bush, 358; *Chapin v. Bridges*, 116 Mass. 105; *Drury v. Newman*, 99 id. 256; *Pierce v. Powell*, 57 Ill. 323; Fitch on R. E. Agency, 105, 108.

COLE, C. J. In March, 1887, the defendant was the owner of certain lots situated in the city of Ashland. He employed the plaintiff, a real-estate broker, to find a purchaser for the lots for $4,000, payable upon specified terms. The plaintiff procured two gentlemen who proposed to buy the lots jointly, and introduced them to the defendant, who accepted them as purchasers; and they definitely agreed to

purchase the property upon the terms fixed by the defendant, paid the sum of $200 on account of the purchase price, and received the written contract of sale which appears in evidence. The plaintiff sues for his commissions. The learned circuit court, after the evidence on both sides was given, directed a verdict for the defendant on the ground that the purchasers had never completed the purchase; that the written contract was not an absolute agreement of purchase, but that the performance thereof was optional with the purchasers, who refused to carry it out.

There is really no dispute about the facts, and the case turns wholly upon the construction of the contract which was entered into by the parties. By the contract the defendant, in effect, sold the lots in question to Seymour and Long for $4,000, on the following terms: One half cash; the balance to be paid in one year, with interest at the rate of eight per cent. per annum. Abstract of title to be furnished without delay, and the warranty deed to be delivered within ten days thereafter, upon the receipt of cash payment and the securities for the deferred payment. It was agreed and understood by the purchasers that if the title was not good and could not be made good, the agreement should be void and the vendor would not be liable for any damages. Two hundred dollars was paid on the contract when it was executed, as " earnest money." In case the title was not good and could not be made good, the $200 earnest money paid by the purchasers was to be returned to them. The contract then reads: " If the title is found to be good, and nevertheless not accepted by the purchasers (the deed being tendered) within the time and as herein named, said earnest money is forfeited as the consideration paid for this agreement, and the owner of said premises shall be considered to have fully performed on his part, and may declare the contract terminated. Time is made the essence of the agreement." This agreement was signed by

the defendant, and the purchasers, in writing, agreed to its terms.

Now the plaintiff's contention is that the instrument is a complete and valid agreement of purchase and sale of the property; that if the title was good the vendees were absolutely bound to accept the property and pay the purchase price, unless the vendor elected to waive a performance on their part and retain the property. We think this construction of the contract is the correct one. We have no doubt that the defendant could have enforced a specific performance of the contract had he seen fit to do so. The option given to terminate the contract was for the benefit of the vendor solely. He could insist upon a performance by the vendees, or release them from the contract, retain the $200, and keep the property. The $200 paid was not, strictly speaking, "earnest money," — that is, a sum paid for the purpose of binding the bargain,— though so denominated. It was in the nature of liquidated damages for a breach of the contract in case the vendees refused to perform. But that the purchasers were absolutely bound to accept the property and pay for it according to the terms of the agreement, we think is quite clear. The learned circuit judge held that the contract gave the purchasers an option for ten days to determine whether they would purchase upon the specified terms or not. But this view we deem erroneous. The provision in the contract was intended for the benefit of the vendor, who could avail himself of it at his election, or waive it and enforce performance of the contract by the vendees by a suit in equity. But the vendees were not entitled to avoid the contract, for it was absolutely binding upon them. This is the view taken of a similar agreement by the supreme court of Minnesota in *Dana v. St. Paul Investment Co.* 42 Minn. 194; and we think it is a correct interpretation of such contracts. That was an action to enforce specific performance of the contract, and the court

held that it was binding upon the vendee, notwithstanding the vendor had the right to avoid the contract at his option; such provision being intended for his benefit, while the contract was obligatory on the vendee. It is true, in this case the vendees did not formally sign the contract, but they assented to its terms in writing, and accepted it. The vendees were unquestionably bound by it. *Lowber v. Connit*, 36 Wis. 176. It is not denied that the abstract was furnished in time, and the title was found to be good. But the defendant saw fit to waive performance and retain the property and the $200 which had been agreed upon as the amount of liquidated damages for a breach on the part of the vendees. It appears, therefore, that the plaintiff procured persons willing and able to purchase the property on the terms fixed by the defendant, and consequently earned his commissions; for the rule of law is well settled in this state that a broker employed to make a sale of property at a price stated or fixed by the owner is entitled to his commissions when he produces a party who makes a purchase. And it is, in general, enough in such a case that the broker produce a party ready to make the purchase at a satisfactory price; and the principal cannot relieve himself from liability by capricious refusal to consummate the sale, or by a voluntary act of his own, disabling him from performance. *Stewart v. Mather*, 32 Wis. 344; *Delaplaine v. Turnley*, 44 Wis. 31; *O'Connor v. Semple*, 57 Wis. 243. There was no failure in this case to produce a purchaser who entered into a valid contract of purchase which could have been enforced. That it was not enforced was no fault of the plaintiff. He performed all he undertook to do, and procured a sale to be made. He is surely entitled to his commissions, though the defendant saw fit to abandon the sale. It is no answer to say the purchasers refused to carry out the contract. The defendant had it in his power to enforce its performance. There is nothing to show that the pur-

chasers were not responsible, and we cannot presume that they were not. As the plaintiff accomplished all he was employed to do, can there be a doubt about his right to recover his commissions? Under the decisions of this and other courts which are cited on the briefs of counsel, the plaintiff fairly earned his commissions. We do not understand that the defendant's counsel controverted this proposition of law, if the contract entered into was valid and binding upon the purchasers, as we have held it was.

It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— It is so ordered.