## UNITED STATES v. TAYLOR.
### No. 3784.

Circuit Court of Appeals, Fourth Circuit.
April 2, 1935.

Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C., and S. Henry Edmunds, Jr., Asst. U. S. Atty., of Charleston, S. C. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to Atty. Gen., on the brief), for the United States.

C. T. Graydon, of Columbia, S. C. (T. P. Taylor and John W. Crews, both of Columbia, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of South Carolina, in an action brought by the appellee, hereinafter referred to as the plaintiff, who seeks to recover under the total disability provision of a war risk insurance policy. The action was brought in January, 1932, and a trial was had at Columbia, S. C., in April, 1934. The cause was submitted to the jury and a verdict rendered in favor of the plaintiff, finding that he had become totally and permanently disabled the 29th day of September 1918, and remained so down to the present time. Upon this verdict judgment was entered.

While in the service there was issued to the plaintiff a war risk term insurance policy in the sum of $10,000. While this contract was in force insured was rated by the Veterans' Bureau as permanently and totally disabled and was paid benefits from September 29, 1918, to September 26, 1921; on September 1, 1921, insured resumed and continued through the month of June, 1927, the payment of premiums under the original contract, the coverage being reduced to $8,894 as a result of the benefits that had been awarded him; effective July 1, 1927, the veteran discontinued his existing contract and took out a $5,000 converted policy in its place, upon this converted policy he paid the premiums up to the date of the trial.

The plaintiff, who, from the evidence, was a gallant soldier and is a good citizen, entered the Army on May 2, 1918, and was honorably discharged May 26, 1921. While in the service overseas plaintiff was injured in action, being severely wounded. He was in various hospitals receiving treatment for his wound and was operated on a number of times. He also had serious stomach trouble, had ulcers on his leg, was bothered with inflamed tonsils, and had some eye strain. After his return to civil life he first acted as an automobile salesman, then engaged in selling life insurance, and then attended the University of South Carolina for a year, but was unable to pass his examinations. From April 20, 1926, to the end of November, 1930, plaintiff worked on a commission basis for a wholesale fruit and produce house, earning during that period a sum in excess of $11,000, and, according to his own testimony, earning, from the work which he performed himself, an average of $199 per month. In November, 1930, plaintiff quit his work and up to the time of the trial had not done any work of any kind.

■ The sole question involved here is whether there is any substantial evidence that the plaintiff became permanently and totally disabled at any time prior to July 31, 1927, when the policy, as originally issued, expired.

That the plaintiff was severely wounded and that he has courageously endeavored to earn a living while laboring under great physical handicaps cannot be doubted, but we cannot reach the conclusion, after careful study of the evidence, that a man who did the work that he did and earned the money that he earned up to the year 1930 could be said to be permanently and totally

disabled within the meaning of the language of the contract.

The plaintiff at the time of the trial weighed 208 pounds and according to his own evidence his condition was not worse at that time than when he was working for his last employer in 1930, and he testified that as a result of his recent medical treatment he felt better. The history of the plaintiff's case would arouse in any one a great sympathy for the plaintiff and admiration for his courage in continuing his work under adverse conditions, but how can it be said that one who in a period of less than five years earned more than $11,000, and who worked steadily, during that period, was permanently and totally disabled? Plaintiff's condition merits the most tender consideration from the government that he served as a soldier and this, from the evidence, he has received in the way of hospitalization, medical treatment, and compensation, but plaintiff's action is upon a contract upon which recovery can be had only upon proof of permanent and total disability. The evidence in the case does not prove such disability. In the case of United States v. Wilson (C. C. A.) 50 F.(2d) 1063, a similar state of facts existed, and we there held that the veteran could not recover. In the case of United States v. Spaulding, 293 U. S. 498, 55 S. Ct. 273, 276, 79 L. Ed. ——, decided by the Supreme Court January 7, 1935, Mr. Justice Butler lays down the law governing this case. There the court said:

"The policy does not cover total temporary disability or partial permanent disability, and does not authorize or permit any payment for physical or mental impairment that is less than 'total permanent disability.' Periods of total temporary disability, though likely to recur at intervals, do not constitute the disability covered by the policy, for 'permanent' means that which is continuing as contrasted with that which is 'temporary.' The fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. It may not be assumed that occasional work for short periods by one generally disabled because of impairment of mind or body does as a matter of law negative total permanent disability. But it is plain that work done may be such as conclusively to negative total permanent disability at an earlier time.

Lumbra v. United States, supra, 290 U. S. [551], 558, 54 S. Ct. 272, 275 [78 L. Ed. 492], et seq. * * *

"In view of these facts, his testimony that under stress of need he worked when not able cannot be given weight, for he is not entitled to recover on the policy unless he became totally disabled before its lapse and thereafter remained in that condition. * * * The fact that, notwithstanding his need of money for the support of his family and himself, he failed for nearly nine years to sue for the insurance money now claimed strongly suggests that he had not suffered total permanent disability covered by the policy. Lumbra v. United States, supra, page 560 of 290 U. S., 54 S. Ct. 276. And that suggestion is emphasized by the fact that in 1928 he procured examination for reinstatement of his insurance. The opinions of respondent's medical witnesses that work impaired his health and tended to shorten his life had no substantial bearing upon the question whether total disability while the policy was in force continued during the subsequent years. As against the facts directly and conclusively established, this opinion evidence₀ furnishes no basis for opposing inferences.

"The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight."

■ The long delay in the bringing of the action is a circumstance weighing heavily against the plaintiff's contention that he was permanently disabled at the time fixed by him. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492.

The law governing suits upon war risk insurance policies has become well settled by the innumerable decisions of the various Courts of Appeals and by the recent decisions of the Supreme Court in the case of Lumbra v. United States, supra, and United States v. Spaulding, supra, and we do not think it is necessary to enter into a discussion of these decisions. We are of the opinion, under the decisions of this court and the Supreme Court, that in this case the evidence and all justifiable inferences that may be drawn from it are not sufficient upon which to base a verdict for the plaintiff, and that therefore the trial judge should have directed a verdict for the United States. United States v. Spaulding, supra, and cases there cited.

The judgment of the court below is accordingly reversed.