### UNITED STATES v. JONES.
### No. 776.

Circuit Court of Appeals, Tenth Circuit.
June 3, 1933.

Philas S. Jones, Asst. U. S. Atty., of Muskogee, Okl. (W. F. Rampendahl, U. S. Atty., of Muskogee, Okl., Davis G. Arnold and C. L. Dawson, both of Washington, D. C., and J. V. Fitts, of Oklahoma City, Okl., on the brief), for the United States.

R. M. Mountcastle, of Muskogee, Okl., and John A. Goodall, of Stilwell, Okl., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The government argues that there is no substantial evidence to support the lower court's finding that appellee was totally and permanently disabled on March 1, 1919. We think there was, and the judgment is accordingly affirmed. A few sentences should be sufficient to dispose of this fact case.

Exposed to the clammy rains of France during the fall and winter of 1918, appellee contracted chest pains and a cough; they persisted after discharge and he was physically unable to work; within a few months from his discharge he was sent to a government hospital at Oklahoma City. The findings of the physicians at that hospital are not disclosed by the record, nor explanation made of their absence; later records of the Bureau recite that he was confined to that hospital with pulmonary tuberculosis; that he was not a well man is indicated by the circumstance that on July 28, 1920, he was rated as totally disabled from February 8, 1919, for the purposes of compensation. From there he was transferred to Camp Logan Hospital at Houston, Texas; from there to a hospital at San Angelo, Texas; from there to Fitzsimons where he was discharged as quiescent in October, 1921; six months later he was sent to the government hospital at Whipple, Arizona, where he remained four long years. Since then he has been at home, unable to work. Despite six years treatment by the best medical skill at the command of a grateful government, and constant care in the finest hospitals money can construct, he was still 20 pounds underweight at the end of this period; his pulse was 100; diagnosis on admission was chronic, active, far-advanced pulmonary tuberculosis; on discharge as moderately advanced but arrested, complicated with arthritis of the spine. In the 1926 report, made by three government specialists after meticulous examination of the patient and his history, there occurs this significant statement: "Training is not feasible." That is to say, although the six years in the hospitals arrested the ravages of the far-advanced tuberculosis he had when he entered the hospitals, his condition was still so precarious that it was not safe for him even to attempt to follow any vocation by which men earn a living. A government examination in 1930 disclosed a temperature and a pulse; a loss of 30 pounds in weight, a moderately advanced tuberculosis thought to be arrested.

There is more, much more, but this is enough. What happens to-morrow may throw a white light on what exists to-day. The years that have elapsed since the spring of 1919 demonstrate, beyond cavil, that on the day of his discharge, appellee's tubercular condition had advanced to the stage that all of the resources of government itself could not restore him to the ranks of the workers of the world.

The judgment was right and is affirmed.