## THOMAS v. UNITED STATES.
### No. 8464.

Circuit Court of Appeal, Fifth Circuit.

Dec. 2, 1937.

John Eliot Feagin, of Atlanta, Ga., and John J. McCreary, of Macon, Ga., for appellant.

Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., Julius C. Martin, Director of War Risk Litigation, of Washington, D. C., and T. Hoyt Davis, U. S. Atty., and H. Grady Rawls, Asst. U. S. Atty., both of Macon, Ga.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for permanent disability benefits under a yearly renewal term war risk insurance policy. The claim was that on March 7, 1927, while his policy was in full force and effect by payment of premiums, plaintiff (as the result of an injury on June 12, 1925, to his right leg, and subsequent treatment and operation therefor) was and became permanently and totally disabled within the meaning of the policy.

The defense was that, though plaintiff did on and before March 11, 1927, suffer an injury, as the result of which he was on that date permanently disabled, said disability was not total within the meaning of the policy, and the policy did not therefore become a matured claim. Tried to a jury, plaintiff offered both lay and medical testimony as to his condition. When plaintiff had rested and before entering upon his proof, defendant moved for an instructed verdict, and over plaintiff's protest that "without the introduction of evidence on the part of defendant the court had no power to grant other than a non-suit or a directed verdict for plaintiff," the trial court directed a verdict for defendant. Later, after the dismissal of the jury, the court of its own motion vacated the verdict and granted a nonsuit. From this grant of a nonsuit plaintiff appeals, asserting (1) that the court was without the power to grant a nonsuit after the dispersal of the jury; that he could grant only a new trial; (2) that its granting was an error, in any event, because plaintiff's evidence was sufficient to make out a case for the jury of total and permanent disability.

Defendant here insists, as it did below, that plaintiff's disability is confined to injury to and impairment of the use of his right leg, and that such impairment cannot be said to constitute total disability.

Plaintiff, not at all disputing defendant's contention, that if plaintiff's evidence proved only this, it would not make a case for the jury, insists that defendant, in so contending, misreads and misconstrues the evidence. He urges upon us that the real effect of his evidence is to show not merely a severe and disabling injury to plaintiff's leg, but injuries to the sciatic nerve, and to plaintiff's nervous system generally, so severe and so disabling as to make it impossible for him, at his age, to enter upon and continue in a substantially gainful occupation. Pressing upon us the settled rule of decision that, unless the evidence permits of only one reasonable conclusion, the question of total and permanent disability in war risk cases is one of fact for the jury, plaintiff, in support of his argument, that the evidence taken most favorably for plaintiff, makes out a jury case, puts forward excerpts from the record which tend strongly to support his view.

It will serve no purpose to set them out. It is sufficient to say that we have carefully and painstakingly read and reread the record, keeping in mind both defendant's contention that no more than a leg injury, and plaintiff's, that much more than that, is shown. We think it plain that plaintiff's evidence would support a verdict that plaintiff's nervous tension was such that he could not get, and if he could get, he could not hold, any substantially gainful position, and that in first directing an instructed verdict, and then granting a nonsuit afterwards, the District Judge erred.

The judgment is reversed, and the cause is remanded for further and not inconsistent proceedings.

SIBLEY, Circuit Judge (dissenting).

I think the case has been inaccurately stated and wrongly decided. The amended petition alleged that the petitioner became totally and permanently disabled as of January 19, 1927. The amended answer categorically denied it. The petition alleged and the answer admitted that claim was filed with the Veterans' Administration on January 29, 1927, and was first denied March 7, 1927. The suit was upon an exhibited certificate of term insurance which the petition alleged and the answer admitted ceased to be of force after July 1, 1927. The motion for directed verdict was upon the ground that there was "no substantial evidence to show that the petitioner became totally and permanently disabled during the life of the policy sued on." It is plain that the issue was on both the permanency and the totality of disability on January 19, 1927, or at latest on July 1, 1927. Col. Thomas went to Macon, Ga., to live on July 21, 1927. All of the witnesses except himself and wife tell only of what happened after that, and almost all of the evidence, including that of himself and wife, is of his condition and prospects in 1936 when the trial occurred. One of the physicians never saw Col. Thomas till June, 1930; the other not till the day before the trial. The latter is the principal witness about pain and nervousness, which are seized upon to save this case from the general rule that the loss of a leg or the use of it does not by itself make total disability. United States v. Martin (C.C.A.) 54 F.2d 554; United States v. Weeks (C.C.A.) 62 F.2d 1030; Hanagan v. United States (C.C.A.) 57 F.2d 860; United States v. Hooper (C.C.A.) 73 F.2d 665. Remembering that the issue relates to January, 1927, when Col. Thomas was only 51 years old, a very poor case of total disability is made out if everything that is testified of 1936 were true of 1927. But the facts at the critical date are simple and given only by Col. Thomas. They are that his right leg was broken in June, 1925, and the bones did not reunite; so that in November, 1926, a bone graft was made and he was put into a plaster cast from his shoulders to his feet and so remained until May 3, 1927. While so situated he was of course totally disabled, but not permanently within the meaning of his insurance, because the circumstances were not such as to render it reasonably certain that he would not recover. When the cast was taken off a union had been secured but it was still soft. It was expected to harden, and eventually did. The leg is shortened, but with a high heel and thick sole can be used without crutch or stick. Col. Thomas now puts forward as the reason why he cannot take and hold any job only his pain and nervousness. According to his petition and evidence the sciatica is in his left leg, and did not appear till 1929. The occasional pain in his right leg and the nervousness did not develop till 1928 or 1929. They are made much more of by the second physician than by Col. Thomas himself. Until the fall of 1927 Col. Thomas states that he expected to go back on active duty, and had hopes of it later, and there is no evidence that his then physicians expected otherwise. In the early part of 1927, he being only 51 years old, there was good hope of his complete recovery. His condition was like that of a person afflicted with incipient tuberculosis, who, because rest is part of the treatment, is thereby totally disabled, but not at once to be considered permanently so. Permanence is not established until all hopeful treatment has been tried and failed, and then not as of the date of the onset of the disease, but as of the date of definite failure to respond to treatment. Insurance like this must be kept up till then to be availed of. See United States v. Cameron (C.C.A.) 87 F.2d 61; Robinson v. United States (C.C.A.) 87 F.2d 343; United States v. Walker (C.C.A.) 77 F.2d 415; United States v. Crew (C.C.A.) 84 F.2d 869; Falbo v. United States (C.C.A.) 64 F.2d 948, affirmed 291 U.S. 646, 54 S.Ct. 456, 78 L. Ed. 1042. The evidence does not show a permanent total disability on or about January 19, 1927.